IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOHN DOE, THE NAME BEING A PSEUDONYM FOR THE PLAINTIFF,<br>Plaintiff,<br><br>v.<br><br>A POLICE OFFICER OF THE SOLEBURY PENNSYLVANIA OR NEW HOPE PENNSYLVANIA POLICE DEPARTMENT , WHOSE NAME IS UNKNOWN TO PLAINTIFF AND ANOTHER POLICE OFFICER OF THE SOLEBURY PENNSYLVANIA OR NEW HOPE PENNSYLVANIA POLICE DEPARTMENT, WHOSE NAME IS UNKNOWN TO PLAINTIFF,<br>Defendant. | CIVIL ACTION<br><br><br>NO. 17-2268 |

## MEMORANDUM OPINION

Plaintiff Brian Condon,[1] proceeding *pro se*, brings this action against three officers in the Solebury Township Police Department—Officer Gary Forrester, Officer Philip Varcoe, and "Officer F" ("Defendants")—relating to two separate incidents during which Plaintiff alleges he was unconstitutionally searched and seized by Defendants in violation of his state and federal rights. Pending now is Defendants' motion to dismiss, which argues that (1) Plaintiff failed to adequately allege a seizure, (2) Defendants had reasonable suspicion to detain Plaintiff, (3) Defendants are entitled to qualified immunity, and (4) Plaintiff is not entitled to punitive damages. For the reasons that follow, the motion will be denied.

I.   Facts[2]

On March 27, 2017, at around 11:00am, Plaintiff was walking on the shoulder of a road.

---
[1] Plaintiff purports to proceed under a pseudonym but has failed to file a motion requesting permission to do so.

[2] These facts, drawn from the Complaint, are taken as true for purposes of a motion to dismiss.

A police cruiser, driven by Defendant Forrester, pulled up next to him. Defendant Forrester asked Plaintiff where he was going and whether he needed a ride. After telling Plaintiff that he wanted to talk, Defendant Forrester then "grabbed the plaintiff's right arm and began leading the plaintiff to the front of the now-stopped police car." Defendant Forrester frisked Plaintiff's body, and removed "a small pouch" from Plaintiff's pocket. Defendant Forrester also "ordered" Plaintiff to remove his backpack and jacket. He searched the backpack, referring to its contents as "garbage." Plaintiff told Defendant Forrester that he did not consent to search of the pouch and that he was otherwise invoking his right to remain silent under the Fifth Amendment. At some point, at least two more officers arrived, one of whom was Defendant "Officer F". Either Defendant Forrester or Defendant "Officer F" eventually lifted Plaintiff's shirt, apparently in search of tattoos on Plaintiff's body. The officers made various comments about Plaintiff's physical appearance that Plaintiff did not understand. Plaintiff was then released by Defendants.

Separately, on May 2, 2017, at around 11:30pm, Plaintiff was walking outside when a police cruiser, driven by Defendant Varcoe, approached. Defendant Varcoe exited the cruiser and began referring to Plaintiff by names Plaintiff did not recognize, and told Plaintiff "I'm gonna taze you," while placing his "hand upon [his] weapon." Defendant Varcoe then "grabbed plaintiff's right elbow," ordered Plaintiff to lay on the ground, and "placed his weight upon Plaintiff." Additional officers then arrived; Plaintiff was handcuffed and walked to the police cruiser; and Defendants frisked Plaintiff, removing items from Plaintiff's pockets. Defendant "Officer F", who had at some point arrived at the scene, told the officer searching Plaintiff that "[h]e carries a knife," although the officer conducting the search did not find a knife. The officers also removed Plaintiff's backpack "by destructive cutting." Eventually the officers placed Plaintiff in the back of a police cruiser, where they asked him questions he did not

understand, and referred to him by names he did not recognize. Defendants eventually released Plaintiff.

## II. Legal Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Threadbare" recitations of the elements of a claim supported only by "conclusory statements" will not suffice. *Id.* at 683. Instead, a plaintiff must allege some facts to raise the allegation above the level of mere speculation. *Zavala v. Wal Mart Stores Inc.*, 691 F.3d 527, 542 (3d Cir. 2012) (citing *Twombly*, 550 U.S. at 545). In determining whether a complaint satisfies this standard, a court must first outline the required elements, then "peel away . . . allegations that are no more than [legal] conclusions and thus not entitled to the assumption of truth," and finally decide whether the well-pled factual allegations—taken as true—entitle the plaintiff to relief. *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012).

## III. Discussion

Defendants' motion asserts four arguments, none of which is availing. They will be addressed in turn.

### A. Failure to Allege a Seizure

First, Defendants argue that the Complaint does not plead facts amounting to a seizure,

and therefore that Plaintiff has not alleged a constitutional violation.[3] The Fourth Amendment protects individuals "against unreasonable searches and seizures." U.S. Const. amend. IV. A person has been "'seized' within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *United States v. Mendenhall*, 446 U.S. 544, 554 (1980). The Supreme Court has offered several "factors indicative of a seizure," which include "the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." *United States v. Smith*, 575 F.3d 308, 313 (3d Cir. 2009) (quoting *Mendenhall*, 446 U.S. at 554)). However, a seizure has not occurred where an officer "merely . . . approach[es] individuals on the street or in other public places and put[s] questions to them if they are willing to listen." *United States v. Drayton*, 536 U.S. 194, 200 (2002).

The Complaint adequately alleges a seizure during both incidents. In the first incident, Plaintiff was "grabbed," frisked, had his shirt "lifted" by Defendants, was "ordered" to remove his jacket and backpack, and confronted by at least three officers. In the second incident, Plaintiff was threatened with a Taser, physically searched, confronted by several officers, handcuffed, told to lay on the ground and then had Defendant Varcoe "place[] his weight upon plaintiff," and held in the back of a police cruiser. Taking the facts in the Complaint as true, a reasonable person "would have believed he was not free to leave." *Mendenhall*, 446 U.S. at 554.

### B. Reasonable Suspicion

Defendants next argue that they had "reasonable suspicion" justifying their efforts to "detain" Plaintiff. Where an officer "has a reasonable, articulable suspicion that criminal activity

---

[3] Even if Defendants were correct that Plaintiff has not pled facts amounting to an unconstitutional seizure, that conclusion would not mandate the holding that Plaintiff "has not alleged a constitutional violation" because Plaintiff also asserts that he was unconstitutionally searched.

is afoot," he may, "consistent with the Fourth Amendment, conduct a brief, investigatory stop." *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000). "Reasonable suspicion" requires "more than an 'inchoate and unparticularized suspicion or hunch' of criminal activity." *Id.* at 124 (quoting *Terry v. Ohio*, 392 U.S. 1, 27 (1968)). Defendants assert that they had "reasonable suspicion" to stop Plaintiff because they "believ[ed] he was Neil Vesce, a wanted person" based on "the officers' belief of a similarity between the physical appearance of Vesce and Plaintiff." Defendants also describe Plaintiff as "evasive to [the officers'] questions."

It is well-established that, subject to narrow exceptions not applicable here, "a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997). Defendants allegations about Neil Vesce, the purported physical similarity between Vesce and Plaintiff, and Plaintiff's alleged evasiveness do not derive from the Complaint—rather, they are "extraneous to the pleadings." *Id.* Therefore, this Court may not consider the factual bases for Defendants' allegations that they had reasonable suspicion to stop Plaintiff, and Defendants' argument must be rejected.

### C. Qualified Immunity

Third, Defendants contend that they are entitled to qualified immunity. The doctrine of qualified immunity provides government officials performing discretionary duties protection from liability for civil damages unless a plaintiff can (1) "make out a violation of a constitutional right," and (2) show that "the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).

Defendants assert that "there is nothing in [Plaintiff's] Complaint that would deny

5

qualified immunity to the individual defendants," and therefore that they are entitled to qualified immunity. This contention, however, misunderstands Plaintiff's burden at the motion to dismiss stage. The Third Circuit has held that a plaintiff does not have "the duty to plead facts relevant to a qualified immunity defense in order to state a claim," because "[q]ualified immunity . . . is a defense available to the government official in question, not a part of the plaintiff's cause of action[.]" *Thomas v. Independence Twp.*, 463 F.3d 285, 292 (3d Cir. 2006) (citing *Gomez v. Toledo*, 446 U.S. 635, 639-40 (1980)). Therefore, Plaintiff's purported failure to affirmatively assert anything "that would deny qualified immunity to the individual defendants" is not a reason to grant qualified immunity to Defendants at this stage in the litigation.

### D. Punitive Damages

Finally, Defendants assert that Plaintiff is not eligible for punitive damages under state law, noting that in Pennsylvania punitive damages are only available for conduct that was "malicious, wanton, reckless, willful, or oppressive." *Rizzo v. Haines*, 555 A.2d 58, 69 (Pa. 1989). Taking Plaintiff's Complaint as true, he has alleged conduct that could plausibly meet this standard, insofar as he alleges that Defendants stopped, searched, and seized Plaintiff intentionally and without reasonable suspicion.

### IV. Conclusion

For the foregoing reasons, the Defendants' motion to dismiss will be denied.

An appropriate order follows.

**BY THE COURT:**

**/s/Wendy Beetlestone, J.**

_____

**WENDY BEETLESTONE, J.**